**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**
YURI MONTGOMERY
**also known as Yuri Malinkovski**
DOB: X/XX/1951; PDID: XXX-XXX

I, David J. Poole, being duly sworn, depose and state as follows:

1.  This affidavit is being submitted in support of an application for a warrant for the arrest of Yuri I. Montgomery also known as Yuri I. Malinkovski who resides at 2912 10th Place West, Seattle, Washington, for violating Title 50 United States Code, Section 1705(b), International Emergency Economic Powers Act (IEEPA).

**AFFIANT'S BACKGROUND**

2.  I am a Senior Special Agent of the United States Department of Commerce, Office of Export Enforcement. I have been a Special Agent with the Department of Commerce, Office of Export Enforcement, for over fifteen years. In the course of my duties, I am responsible for investigating violations of laws relating to the export of controlled commodities and technology from the United States, as established by the Export Administration Act (EAA) of 1979, as amended, 50 U.S.C. App. 2401, et seq., and it's implementing regulations, the Export Administration Regulations (EAR), 15 C.F.R. Parts 730 and 744. While the EAA expired on August 23, 1994, Executive Order 12924, 59 Federal Register 43437, August 23, 1994 continued the EAR in effect under the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. 1701- 1706.[1]

3.  Prior to my position as a Special Agent with the United States Department of Commerce, Office of Export Enforcement, I was employed as a Special Agent with the United States Department of the Treasury, United States Customs Service for approximately two years. As a Special Agent with the United States Customs Service I was responsible for investigating violations of laws relating to the importation of illegal drugs and the illegal export of U.S. military commodities and technology.

4.  Prior to my position as a Special Agent with the United States Customs Service, I was employed as a Special Agent with the United States Department of Justice, Drug Enforcement Administration, for approximately five years. As a Special Agent with Drug Enforcement Administration I was responsible for investigating violations of the United States drug laws.

5.  I have personally participated in this investigation and have witnessed many of the facts and

---

[1] The EAA expired on August 20, 1994. Executive Order 12924 ( 3 C.F.R., 1994 Comp. 917 (1995), which had been by extended by successive Presidential Notices, the most recent being that of August 7, 2003 (68 Fed. Reg. 478333, August 11, 2003), continued the Regulations in effect under the International Emergency Economic Powers Act (50 U.S.C. 1701-1706 (1994 &Supp. IV 1998)).

circumstances described herein. In addition, I have also received information from other federal law enforcement officials. I have reviewed documents during the course of this investigation and interviewed witnesses who have provided information in support of those documents. The statements contained in this affidavit are based on my own observations, witness interviews, document reviews, and reliable information provided to me by other law enforcement officials. This affidavit is being submitted for the purpose of obtaining a arrest warrant. I am setting forth only those facts and circumstances necessary to establish probable cause for the issuance of the requested arrest warrant.

## SUMMARY OF INVESTIGATION

6. I submit that the facts set forth in the affidavit establish:

a. On January 15, 1999, Yuri I. Montgomery, was convicted in the United States District Court in the District of Columbia for violations the EAA and IEEPA ( 50 U.S.C. App. 2401 and 50 U.S.C. 1701-1706) respectively. The Export Administration Regulations (EAR) allows the Department of Commerce to issue a Order Denying Export Privileges which prohibits any person or entity from participating in the export from the United States of any commodities or technology subject to the EAR. Section 766.25 of the EAR states that an order can be issued against a person or entity that has been convicted of a criminal violation of the EAA or IEEPA. On September 11, 2000, an Order Denying Export Privileges was issued by the U.S. Department of Commerce, Director of Exporter Services denying export privileges to Yuri Montgomery until January 15, 2009. (Attachment A) This Order prohibits Montgomery from participating in any capacity in the export from the United States, without written authorization from the United States Department Commerce, Office of Exporter Services. More specifically, the Order Denying Export Privileges clearly states that he may not finance, direct or otherwise participate in these types of transactions involving exports from the United States without written approval from the Department of Commerce. A search of the Department of Commerce, Office of Exporter Services, revealed that Yuri I. Montgomery had not applied for or received any such authorization.

b. Information developed during the course of this investigation indicates that about on or between July 2002, and on or about October 2003, Yuri I. Montgomery, acting as the "U.S. representative" for Micei International, with an office located at 2912 10th Place West, Seattle, Washington, financed and directed eleven exports and one attempted export from the United States of commodities subject to the EAR.

c. A review of records relating to the eleven illegal exports and one attempted illegal export committed by Yuri Montgomery revealed that on each occasion Montgomery informed the suppliers of the goods that he was the "U.S. representative" for Micei International in Macedonia. In e-mails exchanged between Montgomery and these firms he ( Montgomery) also frequently listed his home address 2912 10th Place West, Seattle, Washington, as the U.S. operations office for Micei International. Montgomery also made it clear in these e-mails that he was acting on behalf of and with the full authorization of Micei International located in Skopje, Macedonia. Micei International

was copied on several of these e-mails.

d.   A review of credit card records pertaining to Yuri I. Montgomery's indicates that a VISA card in the name of Yuri I. Montgomery was used to pay for all of the above mentioned exports and one attempted export. Documents obtained during the course of this investigation also revealed that Montgomery stated in several e-mails sent to various companies he purchased items from, that he was the " U.S. representative " for Micei International.

e.   In on or about July, 2003, Montgomery exchanged a series of e-mails and telephone conversations with representatives of Range Systems Inc. located in New Hope, Minnesota. During these communications Montgomery requested information relating to the purchase of two Guardian Firearms Clearing Units. Montgomery informed Range Systems that he was the U.S. Operations Manager for Micei International in Macedonia. Montgomery described Micei as a supplier of police and military items with over twenty retail outlets in Europe. According to Montgomery the two guardian clearing units, which were to be exported to Micei International in Macedonia, were the first part of a much larger order. On July 18, 2003 the guardian clearing devices were exported to Micei International in Macedonia under authority of the U.S. Department of Commerce license exception No License Required (NLR). Montgomery's actions in this matter were in violation of the terms of his Order Denying Export Privileges.

f.  On or about October 8, 2003, Montgomery sent an e-mail to Gall's Incorporated located in Lexington, Kentucky. The e-mail sent by Montgomery ordered from Gall's Incorporated a shipment of police uniform pants and shirts which were to be exported to Micei International in Macedonia. Montgomery requested that this order be charged to his Visa credit card and instructed that the freight should be exported by Khuene & Nagel Shipping in Hebron, Kentucky. After this order was delivered to the freight company , the affiant was informed of this pending export and instructed the shipping company that the freight should be detained as an attempted illegal export by a "denied person." After detaining the shipment the affiant notified Gall's Incorporated and spoke with a representative of Gall's International. The representative informed the affiant that it had personally dealt with Yuri Montgomery on this shipment as well as several others. According the witness, Montgomery would communicate with it via telephone and e-mail and that he (Montgomery) always identified himself as the "U.S. representative" for Micei International in Macedonia.

g.  On or about October 8, 2003, after learning that his shipment had been detained, Montgomery placed a telephone call to Mr. Steve Perry Air Export Manager for Khuene & Nagel Shipping in Hebron, Kentucky. During this telephone conversation Montgomery reportedly asked Mr. Perry to falsify a U.S. Department of Commerce Shipper's Export Declaration by removing any reference to Micei International in Macedonia and to ship the goods to Ekopak Ltd in Vienna, Austria. Mr. Perry refused Montgomery's request and advised him that the goods could not be removed until they were released by the government. Montgomery's actions in this matter were in violation of his Order Denying Export Privileges.

h. During an interview with United States Department of Commerce investigators, Montgomery reviewed documents provided to him by the investigators relating to the eleven exports and one attempted export. After reviewing the documents Montgomery stated that he had in fact ordered all of the commodities in question, paid for them, and arranged for their shipment to a freight company for export to Micei International in Macedonia.. According to Montgomery, he would receive orders from Micei International at his residence at 2912 10th Place West, Seattle, Washington, by fax, email or by telephone. Montgomery would then e-mail the suppliers for pricing and delivery information. This information would be e-mailed or faxed to Micei International and when approval was received, Montgomery would email the suppliers and order the commodities in question. Several of the e-mails sent by Montgomery to the suppliers of these goods, requested that a copy of the invoices for the exports be sent to Micei International's U.S. Operations Office located at the above-mentioned address.

i. In July, 2004, a search warrant was executed at Montgomery's residence located at 2912 10th Place West, Seattle, Washington which resulted in the seizure of numerous documents as well as a mirror image of Montgomery's computer hard drive. A review of the seized records and computer files revealed that on two occasions between on or about July 30, 2001 and on or about October 15, 2001, Montgomery exported computer equipment to the United Kingdom. A search of U.S. Department of Commerce records revealed that Montgomery failed to receive prior authorization from the Department of Commerce for these exports. Montgomery's actions relating to these shipments violated the Order Denying Export Privileges as well as the terms of his probation.

j. Also recovered from Montgomery's residence pursuant to the execution of the search warrant referred to above, was a copy of the September 11, 2000, Order Denying Export Privileges, and two letters to William Reinsch, Undersecretary for Export Administration dated October 24, 2000, and October 31, 2000, requesting that Montgomery's export privileges be reinstated and a second letter to William Reinsch, Undersecretary for Export Administration. The Order Denying Export Privileges clearly explained the restrictions imposed on Montgomery by the Department of Commerce. Both of his requests were denied.

**EXPORT LAWS AND REGULATIONS**

7. The EAR prohibit any person from exporting or causing to be exported from the United States any controlled commodity without having first obtained a validated export license from the United States Department of Commerce. Pursuant to 15 C.F.R. §764.2(a), "No person may engage in any conduct prohibited by or contrary to ... the EAA, the EAR, or any order, license, or authorization issued thereunder." In addition, for purposes of the EAR, items subject to the EAR that will transit or be transshipped through a country or countries to a new country are deemed to be exports to the new country. See 15 C.F.R. § 734.2(b).

a. According to 15 C.F.R. 764.2 (b), "No person may cause or aid, abet, counsel, command, induce procure, or permit the doing of any act prohibited, or the omission of any act required,

    by the EAA, the EAR or any order, license or authorization issued thereunder."

b.     According to 15 C.F.R. 764.2 (e), "No person may order, buy, remove, conceal, store, use, sell, loan, dispose of, transfer, transport, finance, forward, or otherwise service, in whole or in part, any item exported or to be exported from the United States, or that is otherwise subject to the EAR, with knowledge that a violation of the EAA, the EAR, or any order, license or authorization issued thereunder has occurred, is about to occur, or is intended to occur in connection with the item."

c.     Providing false or misleading information on a Shipper's Export Declaration (SED) is a violation of 15 C.F.R. 764.2(g)(1)(ii).

d.     Title 50 U.S.C. App. § 1705 sets forth criminal penalties for knowingly violating or conspiring to violate any provision of the IEEPA.

## CONCLUSION

Based on the foregoing, I believe that there is probable cause to establish that Yuri I. Montgomery a.k.a Yuri I. Malinkovski, who resides at 2912 10th Place West, Seattle, Washington, has willfully violated the EAR and IEEPA and the September 11, 2000 Order Denying Export Privileges in violation of 50 U.S.C. 1705 (b), by willfully exporting commodities subject to the EAR without the required authorization from the Department of Commerce, Office of Exporter Services, and in violation of the September 11, 2000 Order Denying Export Privileges .

 

_____
David J. Poole, Senior Special Agent
U.S. Department of Commerce
Office of Export Enforcement


Sworn and subscribed to before me this _____ day of May, 2005.


_____
United States Magistrate Judge