UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
Office of the Clerk
700 STEWART ST. LOBBY LEVEL
SEATTE, WA 98101
(206) 370-8400

May 11, 2005

Clerk, US District Court
District of Columbia
1834 E. Barrett Prettyman US Courthouse
333 Constitution Avenue, N.W.
Washington, DC 20001

Re:   **Yuri I. Montgomery**
      Your Case No: **05-0248M-01**
      Our Case No: **05-227M**

Dear Clerk:

Enclosed are original and/or certified copies of the following documents in the above referenced case pursuant to Rule 5, Federal Rules of Criminal Procedure:

1. Waiver of Rule 5 Hearing and Order of Transfer
2. Minutes of May 9, 2005 Initial Proceeding
3. Appearance Bond
4. Macedonian Passport
5. Docket Sheet

Please acknowledge receipt on the enclosed copy of this letter and return it in the provided business reply envelope.

Sincerely,

BRUCE RIFKIN, District Court Executive

*Heather Arent-Zachary*

Heather Arent-Zachary
Deputy Clerk

BOND, CLOSED, PASSPORT

# U.S. District Court
## WESTERN DISTRICT OF WASHINGTON (Seattle)
## CRIMINAL DOCKET FOR CASE #: 2:05-mj-00227-MJB-ALL
### Internal Use Only

Case title: USA v. Montgomery                                    Date Filed: 05/09/2005
Other court case number: 05-0248M-01 District of Columbia

---

Assigned to: Hon. Monica J. Benton

**Defendant**

**Yuri I Montgomery** (1)              represented by  **John Joseph Meske**
*TERMINATED: 05/09/2005*                                535 E DOCK ST
                                                        STE 100
                                                        TACOMA, WA 98402
                                                        253-383-5346
                                                        Email: JOHNMESKE@aol.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*
                                                        Designation: Retained

**Pending Counts**                     **Disposition**
None

**Highest Offense Level (Opening)**
None

**Terminated Counts**                  **Disposition**
None

**Highest Offense Level (Terminated)**
None

**Complaints**                         **Disposition**
50:1705(b) Export Violation

I hereby certify that the annexed instrument is a true and correct copy of the original on file in my office.
ATTEST: BRUCE RIFKIN
Clerk, U. S. District Court
Western District of Washington
By _____ Deputy Clerk

**Plaintiff**

USA                                     represented by   **Karyn S Johnson**
US ATTORNEY'S OFFICE (SEA)
700 STEWART ST
STE 5220
SEATTLE, WA 98101-1271
206-553-7970
Email: Karyn.S.Johnson@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/06/2005 |  | Arrest of Yuri I Montgomery on 5/6/2005. (HAZ, ) (Entered: 05/10/2005) |
| 05/09/2005 | 1 | CHARGING DOCUMENT RECEIVED FROM OTHER COURT as to Yuri I Montgomery (HAZ, ) (Entered: 05/10/2005) |
| 05/09/2005 | 2 | Appearance Bond Entered as to Yuri I Montgomery (1) PR bond w/PTS supervision and special conditions. (cc: PTS/USPO) (HAZ, ) (Entered: 05/10/2005) |
| 05/09/2005 | 3 | Receipt for Surrender of Passport as to Yuri I Montgomery. Passport issued by Macedonia. (HAZ, ) (Entered: 05/10/2005) |
| 05/09/2005 | 4 | WAIVER OF RULE 5 HEARINGS AND ORDER OF TRANSFER to District of Columbia as to Yuri I Montgomery by Judge Monica J. Benton. (cc: PTS, USMO) (HAZ, ) (Entered: 05/10/2005) |
| 05/09/2005 | 5 | Minute Entry for proceedings held before Judge Monica J. Benton - CRD: *Agalelei Elkington*; AUSA: *Karyn Johnson*; Def Cnsl: *John Meske*; PTS: *Sarah Cavendish*; Time of Hearing: *2:30pm*; Courtroom: *12B*; **INITIAL APPEARANCE IN RULE 5(c)(3) PROCEEDINGS** as to Yuri I Montgomery held on 5/9/2005.<br><br>Defendant present in custody. Defendant advised of rights and charges. Waiver of Rule 5 Hearings and Order to transer filed.<br><br>Court hears from counsel regarding release. Defendant placed on bond. (AE, ) (Entered: 05/11/2005) |

AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

## For The District of Columbia

UNITED STATES OF AMERICA

v.

YURI I. MONTGOMERY
also known as Yuri Malinkovski
DOB: 6/16/1951
PDID: 499-606

**CRIMINAL COMPLAINT**

CASE NUMBER: 05-0248M-01

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __July 2002 to on or about October 2003__ in __Washington, D.C.__ county, in the _____ District of __Columbia__ defendant(s) did, (Track Statutory Language of Offense)

export or attempt to cause the export of United States origin products, from the United States to Macedonia in violation of an order to Deny Export Privileges issued by the Department of Commerce and in violation of the Export Administration Regulations.

in violation of Title __50__ United States Code, Section(s) __1705 (b)__.

I further state that I am __David J. Poole, Special Agent with the U.S. Department of Commerce, Office of Export Enforcement__, and that this complaint is based on the following facts:

See Attached Affidavit

United States District Court
For the District of Columbia
A TRUE COPY
NANCY MAYER WHITTINGTON, Clerk
By _____ Deputy Clerk

Continued on the attached sheet and made a part hereof: ☒ Yes ☐ No

_____
AUSA, Heidi Pasichow (202) 514-7533
Sworn to before me and subscribed in my presence,

MAY - 4 2005
Date

ALAN KAY
U.S. MAGISTRATE JUDGE
Name & Title of Judicial Officer

Signature of Complainant
David J. Poole, Senior Special Agent
U.S. Department of Commerce
Office of Customs Enforcement

at __Washington, D.C.__
City and State

Signature of Judicial Officer

05-MJ-00227-INDI

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT
### YURI MONTGOMERY
### also known as Yuri Malinkovski
### DOB: 6/16/1951; PDID:

I, David J. Poole, being duly sworn, depose and state as follows:

1. This affidavit is being submitted in support of an application for a warrant for the arrest of Yuri I. Montgomery also known as Yuri I. Malinkovski who resides at 2912 10th Place West, Seattle, Washington, for violating Title 50 United States Code, Section 1705(b), International Emergency Economic Powers Act (IEEPA).

## AFFIANT'S BACKGROUND

2. I am a Senior Special Agent of the United States Department of Commerce, Office of Export Enforcement. I have been a Special Agent with the Department of Commerce, Office of Export Enforcement, for over fifteen years. In the course of my duties, I am responsible for investigating violations of laws relating to the export of controlled commodities and technology from the United States, as established by the Export Administration Act (EAA) of 1979, as amended, 50 U.S.C. App. 2401, et seq., and it's implementing regulations, the Export Administration Regulations (EAR), 15 C.F.R. Parts 730 and 744. While the EAA expired on August 23, 1994, Executive Order 12924, 59 Federal Register 43437, August 23, 1994 continued the EAR in effect under the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. 1701- 1706.[1]

3. Prior to my position as a Special Agent with the United States Department of Commerce, Office of Export Enforcement, I was employed as a Special Agent with the United States Department of the Treasury, United States Customs Service for approximately two years. As a Special Agent with the United States Customs Service I was responsible for investigating violations of laws relating to the importation of illegal drugs and the illegal export of U.S. military commodities and technology.

4. Prior to my position as a Special Agent with the United States Customs Service, I was employed as a Special Agent with the United States Department of Justice, Drug Enforcement Administration, for approximately five years. As a Special Agent with Drug Enforcement Administration I was responsible for investigating violations of the United States drug laws.

5. I have personally participated in this investigation and have witnessed many of the facts and

---

[1] The EAA expired on August 20, 1994. Executive Order 12924 ( 3 C.F.R., 1994 Comp. 917 (1995), which had been by extended by successive Presidential Notices, the most recent being that of August 7, 2003 (68 Fed. Reg. 478333, August 11, 2003), continued the Regulations in effect under the International Emergency Economic Powers Act (50 U.S.C. 1701-1706 (1994 &Supp. IV 1998)).

1

United States District Court
For the District of Columbia
A TRUE COPY
NANCY MAYER WHITTINGTON, Clerk
By_____
Deputy Clerk

circumstances described herein. In addition, I have also received information from other federal law enforcement officials. I have reviewed documents during the course of this investigation and interviewed witnesses who have provided information in support of those documents. The statements contained in this affidavit are based on my own observations, witness interviews, document reviews, and reliable information provided to me by other law enforcement officials. This affidavit is being submitted for the purpose of obtaining a arrest warrant. I am setting forth only those facts and circumstances necessary to establish probable cause for the issuance of the requested arrest warrant.

## SUMMARY OF INVESTIGATION

6. I submit that the facts set forth in the affidavit establish:

a. On January 15, 1999, Yuri I. Montgomery, was convicted in the United States District Court in the District of Columbia for violations the EAA and IEEPA ( 50 U.S.C. App. 2401 and 50 U.S.C. 1701-1706) respectively. The Export Administration Regulations (EAR) allows the Department of Commerce to issue a Order Denying Export Privileges which prohibits any person or entity from participating in the export from the United States of any commodities or technology subject to the EAR. Section 766.25 of the EAR states that an order can be issued against a person or entity that has been convicted of a criminal violation of the EAA or IEEPA. On September 11, 2000, an Order Denying Export Privileges was issued by the U.S. Department of Commerce, Director of Exporter Services denying export privileges to Yuri Montgomery until January 15, 2009. (Attachment A) This Order prohibits Montgomery from participating in any capacity in the export from the United States, without written authorization from the United States Department Commerce, Office of Exporter Services. More specifically, the Order Denying Export Privileges clearly states that he may not finance, direct or otherwise participate in these types of transactions involving exports from the United States without written approval from the Department of Commerce. A search of the Department of Commerce, Office of Exporter Services, revealed that Yuri I. Montgomery had not applied for or received any such authorization.

b. Information developed during the course of this investigation indicates that about on or between July 2002, and on or about October 2003, Yuri I. Montgomery, acting as the "U.S. representative" for Micei International, with an office located at 2912 10th Place West, Seattle, Washington, financed and directed eleven exports and one attempted export from the United States of commodities subject to the EAR.

c. A review of records relating to the eleven illegal exports and one attempted illegal export committed by Yuri Montgomery revealed that on each occasion Montgomery informed the suppliers of the goods that he was the "U.S. representative" for Micei International in Macedonia. In e-mails exchanged between Montgomery and these firms he (Montgomery) also frequently listed his home address 2912 10th Place West, Seattle, Washington, as the U.S. operations office for Micei International. Montgomery also made it clear in these e-mails that he was acting on behalf of and with the full authorization of Micei International located in Skopje, Macedonia. Micei International

2

was copied on several of these e-mails.

d. A review of credit card records pertaining to Yuri I. Montgomery's indicates that a VISA card in the name of Yuri I. Montgomery was used to pay for all of the above mentioned exports and one attempted export. Documents obtained during the course of this investigation also revealed that Montgomery stated in several e-mails sent to various companies he purchased items from, that he was the "U.S. representative" for Micei International.

e. In on or about July, 2003, Montgomery exchanged a series of e-mails and telephone conversations with representatives of Range Systems Inc. located in New Hope, Minnesota. During these communications Montgomery requested information relating to the purchase of two Guardian Firearms Clearing Units. Montgomery informed Range Systems that he was the U.S. Operations Manager for Micei International in Macedonia. Montgomery described Micei as a supplier of police and military items with over twenty retail outlets in Europe. According to Montgomery the two guardian clearing units, which were to be exported to Micei International in Macedonia, were the first part of a much larger order. On July 18, 2003 the guardian clearing devices were exported to Micei International in Macedonia under authority of the U.S. Department of Commerce license exception No License Required (NLR). Montgomery's actions in this matter were in violation of the terms of his Order Denying Export Privileges.

f. On or about October 8, 2003, Montgomery sent an e-mail to Gall's Incorporated located in Lexington, Kentucky. The e-mail sent by Montgomery ordered from Gall's Incorporated a shipment of police uniform pants and shirts which were to be exported to Micei International in Macedonia. Montgomery requested that this order be charged to his Visa credit card and instructed that the freight should be exported by Khuene & Nagel Shipping in Hebron, Kentucky. After this order was delivered to the freight company, the affiant was informed of this pending export and instructed the shipping company that the freight should be detained as an attempted illegal export by a "denied person." After detaining the shipment the affiant notified Gall's Incorporated and spoke with a representative of Gall's International. The representative informed the affiant that it had personally dealt with Yuri Montgomery on this shipment as well as several others. According the witness, Montgomery would communicate with it via telephone and e-mail and that he (Montgomery) always identified himself as the "U.S. representative" for Micei International in Macedonia.

g. On or about October 8, 2003, after learning that his shipment had been detained, Montgomery placed a telephone call to Mr. Steve Perry Air Export Manager for Khuene & Nagel Shipping in Hebron, Kentucky. During this telephone conversation Montgomery reportedly asked Mr. Perry to falsify a U.S. Department of Commerce Shipper's Export Declaration by removing any reference to Micei International in Macedonia and to ship the goods to Ekopak Ltd in Vienna, Austria. Mr. Perry refused Montgomery's request and advised him that the goods could not be removed until they were released by the government. Montgomery's actions in this matter were in violation of his Order Denying Export Privileges.

3

h. During an interview with United States Department of Commerce investigators, Montgomery reviewed documents provided to him by the investigators relating to the eleven exports and one attempted export. After reviewing the documents Montgomery stated that he had in fact ordered all of the commodities in question, paid for them, and arranged for their shipment to a freight company for export to Micei International in Macedonia.. According to Montgomery, he would receive orders from Micei International at his residence at 2912 10th Place West, Seattle, Washington, by fax, email or by telephone. Montgomery would then e-mail the suppliers for pricing and delivery information. This information would be e-mailed or faxed to Micei International and when approval was received, Montgomery would email the suppliers and order the commodities in question. Several of the e-mails sent by Montgomery to the suppliers of these goods, requested that a copy of the invoices for the exports be sent to Micei International's U.S. Operations Office located at the above-mentioned address.

i. In July, 2004, a search warrant was executed at Montgomery's residence located at 2912 10th Place West, Seattle, Washington which resulted in the seizure of numerous documents as well as a mirror image of Montgomery's computer hard drive. A review of the seized records and computer files revealed that on two occasions between on or about July 30, 2001 and on or about October 15, 2001, Montgomery exported computer equipment to the United Kingdom. A search of U.S. Department of Commerce records revealed that Montgomery failed to receive prior authorization from the Department of Commerce for these exports. Montgomery's actions relating to these shipments violated the Order Denying Export Privileges as well as the terms of his probation.

j. Also recovered from Montgomery's residence pursuant to the execution of the search warrant referred to above, was a copy of the September 11, 2000, Order Denying Export Privileges, and two letters to William Reinsch, Undersecretary for Export Administration dated October 24, 2000, and October 31, 2000, requesting that Montgomery's export privileges be reinstated and a second letter to William Reinsch, Undersecretary for Export Administration. The Order Denying Export Privileges clearly explained the restrictions imposed on Montgomery by the Department of Commerce. Both of his requests were denied.

## EXPORT LAWS AND REGULATIONS

7. The EAR prohibit any person from exporting or causing to be exported from the United States any controlled commodity without having first obtained a validated export license from the United States Department of Commerce. Pursuant to 15 C.F.R. §764.2(a), "No person may engage in any conduct prohibited by or contrary to ... the EAA, the EAR, or any order, license, or authorization issued thereunder." In addition, for purposes of the EAR, items subject to the EAR that will transit or be transshipped through a country or countries to a new country are deemed to be exports to the new country. See 15 C.F.R. § 734.2(b).

a. According to 15 C.F.R. 764.2 (b), "No person may cause or aid, abet, counsel, command, induce procure, or permit the doing of any act prohibited, or the omission of any act required,

4

05-0248M-01

by the EAA, the EAR or any order, license or authorization issued thereunder."

b. According to 15 C.F.R. 764.2 (e), "No person may order, buy, remove, conceal, store, use, sell, loan, dispose of, transfer, transport, finance, forward, or otherwise service, in whole or in part, any item exported or to be exported from the United States, or that is otherwise subject to the EAR, with knowledge that a violation of the EAA, the EAR, or any order, license or authorization issued thereunder has occurred, is about to occur, or is intended to occur in connection with the item."

c. Providing false or misleading information on a Shipper's Export Declaration (SED) is a violation of 15 C.F.R. 764.2(g)(1)(ii).

d. Title 50 U.S.C. App. § 1705 sets forth criminal penalties for knowingly violating or conspiring to violate any provision of the IEEPA.

## CONCLUSION

Based on the foregoing, I believe that there is probable cause to establish that Yuri I. Montgomery a.k.a Yuri I. Malinkovski, who resides at 2912 10th Place West, Seattle, Washington, has willfully violated the EAR and IEEPA and the September 11, 2000 Order Denying Export Privileges in violation of 50 U.S.C. 1705 (b), by willfully exporting commodities subject to the EAR without the required authorization from the Department of Commerce, Office of Exporter Services, and in violation of the September 11, 2000 Order Denying Export Privileges.

_____
David J. Poole, Senior Special Agent
U.S. Department of Commerce
Office of Export Enforcement

MAY - 4 2005
Sworn and subscribed to before me this _____ day of May 2005.

_____
United States Magistrate Judge

**ALAN KAY
U.S. MAGISTRATE JUDGE**

5

"ATTACHMENT A"

UNITED STATES DEPARTMENT OF COMMERCE
BUREAU OF EXPORT ADMINISTRATION
WASHINGTON, D.C. 20230

---

In the Matter of: )
)
Yuri I. Montgomery, )
  also known as Yuri I. Malinkovski )
518 Howard Avenue, N. E. )
Olympia, Washington 98506 )
)

---

## ORDER DENYING EXPORT PRIVILEGES

On January 22, 1999, Yuri I. Montgomery, also known as Yuri I. Malinkovski (Montgomery) was convicted in the United States District Court for the District of Columbia of violating the International Emergency Economic Powers Act (50 U.S.C.A. §§ 1701-1706 (1991 & Supp. 2000)) (IEEPA) and the Export Administration Act of 1979, as amended (currently codified at 50 U.S.C.A. app. §§ 2401-2420 (1991 & Supp. 2000)) (the Act).[1] Specifically, Montgomery was convicted of knowingly and willfully exporting and causing the export of U.S.-origin stun guns to Macedonia and U.S.-origin laser gun sights to Slovenia without applying for and obtaining the required export licenses from the Department of Commerce, and of knowingly and willfully exporting and causing the export of U.S.-origin PAGST military helmets to Slovenia and U.S.-origin handcuffs, laser gun sights, and laser mountings to Macedonia without applying for and obtaining the required export licenses from the Department of Commerce.

---

[1] The Act expired on August 20, 1994. Executive Order 12924 (3 C.F.R., 1994 Comp. 917 (1995)), which has been extended by successive Presidential Notices, the most recent being that of August 3, 2000 (65 Fed. Reg. 48347, August 8, 2000), continued the Regulations in effect under the IEEPA.

2

Section 11(h) of the Act provides that, at the discretion of the Secretary of Commerce,[2] no person convicted of violating the IEEPA or the Act, or certain other provisions of the United States Code, shall be eligible to apply for or use any export license issued pursuant to, or provided by, the Act or the Export Administration Regulations (currently codified at 15 C.F.R. Parts 730-774 (2000), as amended (65 Fed. Reg. 14862, March 20, 2000)) (the Regulations), for a period of up to 10 years from the date of the conviction. In addition, any license issued pursuant to the Act in which such a person had any interest at the time of conviction may be revoked.

Pursuant to Sections 766.25 and 750.8(a) of the Regulations, upon notification that a person has been convicted of violating the IEEPA or the Act, the Director, Office of Exporter Services, in consultation with the Director, Office of Export Enforcement, shall determine whether to deny that person's export privileges for a period of up to 10 years from the date of conviction and shall also determine whether to revoke any license previously issued to such a person.

Having received notice of Montgomery's conviction for violating the IEEPA and the Act, and after providing notice and an opportunity for Montgomery to make a written submission to the Bureau of Export Administration before issuing an Order denying his export privileges, as provided in Section 766.25 of the Regulations, I, following consultations with the Director, Office of Export Enforcement, have decided to deny Montgomery's export privileges for a period of 10 years from the date of his conviction. The 10-year period ends on January 22, 2009. I have

---

[2] Pursuant to appropriate delegations of authority that are reflected in the Regulations, the Director, Office of Exporter Services, in consultation with the Director, Office of Export Enforcement, exercises the authority granted to the Secretary by Section 11(h) of the Act.

3

also decided to revoke all licenses issued pursuant to the Act in which Montgomery had an interest at the time of his conviction.

Accordingly, it is hereby

ORDERED

I.    Until January 22, 2009, Yuri I. Montgomery, also known as Yuri I. Malinkovski 518 Howard Avenue, N. E., Olympia, Washington 98506, may not, directly or indirectly, participate in any way in any transaction involving any commodity, software or technology (hereinafter collectively referred to as "item") exported or to be exported from the United States, that is subject to the Regulations, or in any other activity subject to the Regulations, including, but not limited to:

    A.    Applying for, obtaining, or using any license, License Exception, or export control document;

    B.    Carrying on negotiations concerning, or ordering, buying, receiving, using, selling, delivering, storing, disposing of, forwarding, transporting, financing, or otherwise servicing in any way, any transaction involving any item exported or to be exported from the United States that is subject to the Regulations, or in any other activity subject to the Regulations; or

    C.    Benefiting in any way from any transaction involving any item exported or to be exported from the United States that is subject to the Regulations, or in any other activity subject to the Regulations.

II.    No person may, directly or indirectly, do any of the following:

4

A. Export or reexport to or on behalf of the denied person any item subject to the Regulations;

B. Take any action that facilitates the acquisition or attempted acquisition by the denied person of the ownership, possession, or control of any item subject to the Regulations that has been or will be exported from the United States, including financing or other support activities related to a transaction whereby the denied person acquires or attempts to acquire such ownership, possession or control;

C. Take any action to acquire from or to facilitate the acquisition or attempted acquisition from the denied person of any item subject to the Regulations that has been exported from the United States;

D. Obtain from the denied person in the United States any item subject to the Regulations with knowledge or reason to know that the item will be, or is intended to be, exported from the United States; or

E. Engage in any transaction to service any item subject to the Regulations that has been or will be exported from the United States and which is owned, possessed or controlled by the denied person, or service any item, of whatever origin, that is owned, possessed or controlled by the denied person if such service involves the use of any item subject to the Regulations that has been or will be exported from the United States. For purposes of this paragraph, servicing means installation, maintenance, repair, modification or testing.

III. After notice and opportunity for comment as provided in Section 766.23 of the Regulations, any person, firm, corporation, or business organization related to Montgomery by

5

affiliation, ownership, control, or position of responsibility in the conduct of trade or related services may also be subject to the provisions of this Order.

IV. This Order does not prohibit any export, reexport, or other transaction subject to the Regulations where the only items involved that are subject to the Regulations are the foreign-produced direct product of U.S.-origin technology.

V. This Order is effective immediately and shall remain in effect until January 22, 2009.

VI. In accordance with Part 756 of the Regulations, Montgomery may file an appeal from this Order with the Under Secretary for Export Administration. The appeal must be filed within 45 days from the date of this Order and must comply with the provisions of Part 756 of the Regulations.

VII. A copy of this Order shall be delivered to Montgomery. This Order shall be published in the Federal Register.

Date: 9/11/00

Eileen M. Albanese
Director
Office of Exporter Services

AO442 (Rev. 12/85) Warrant for Arrest

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA
V.

YURI I. MONTGOMERY
also known as Yuri Malinkovski
DOB: 6/16/1951
PDID: 499-606

**WARRANT FOR ARREST**

CASE NUMBER: 05-0248M-01

To: The United States Marshal
and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest ___YURI I. MONTGOMERY___
                                          Name

and bring him or her forthwith to the nearest magistrate to answer a(n)

☐ Indictment  ☐ Information  ☒ Complaint  ☐ Order of Court  ☐ Violation Notice  ☐ Probation Violation Petition

charging him or her with (brief description of offense)

EXPORT

in violation of Title __50__ United States Code, Section(s) __1705 (b)__.

Name of Issuing Officer: ALAN KAY / U.S. MAGISTRATE JUDGE
Title of Issuing Officer: U.S. MAGISTRATE JUDGE
Signature of Issuing Officer
Date and Location: MAY - 4 2005

District of Columbia / United States District Court
For the District of Columbia
A TRUE COPY
NANCY MAYER WHITTINGTON, Clerk
By _____ Deputy Clerk

Bail fixed at $ _____ by _____
                                Name of Judicial Officer

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at | | |
| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
| DATE OF ARREST | | |



# United States District Court
### Western District of Washington

UNITED STATES OF AMERICA,  
    vs.  
**YURI I. MONTGOMERY**

**APPEARANCE BOND**  
Case No. **05-227M**

I understand that I may be released from custody, pending further proceedings in this case, on the conditions marked below:

☒ **Court Appearances.** I must appear in court at the U.S. Courthouse, 333 Constitution Avenue NW on May 18, 2005 at 1:45pm and at all other hearings in this case, including turning myself in to begin serving a sentence, should that occasion arise. I UNDERSTAND THAT A WILLFUL FAILURE TO APPEAR IN COURT AT A TIME SET FOR HEARING IS A SEPARATE CRIMINAL OFFENSE, PUNISHABLE BY UP TO 10 YEARS IMPRISONMENT AND A FINE OF $250,000.

☒ **No Law Violations.** I must not commit a federal, state, or local crime during the period of release. I understand that if I commit a felony while on release, my sentence can be increased by a maximum of ten years. If I commit a misdemeanor while on release, my sentence can be increased by a maximum of one year. These sentences would be consecutive to all other applicable sentences.

☒ **No Controlled Substances.** I must not use, consume or possess any controlled substances, including medication, unless prescribed by a physician and approved in advance by the Pretrial Services Officer.

☒ **Address.** I must furnish on this form the address and telephone number (if any) where I will reside upon release and where I will receive any notices of hearing dates. I must report any changes in that address or telephone number to the Pretrial Services Office of the Court ( telephone number (206) 370-8950 ) within one business day.

☒ **Restrictions on Travel.** I must comply with any directions from the Pretrial Services Officer limiting my travel.

☒ **Victim and Witness Protection.** I must not harass, threaten, intimidate, tamper with, improperly influence, or injure the person or property of witnesses, jurors, informants, victims of crime, judicial officers, or other persons related to official proceedings before the Court, in violation of 18 U.S.C. §§ 1503, 1512, and 1513.

☒ **Pretrial Supervision.** I am subject to Pretrial Services supervision by the Pretrial Services Office of the Court and must abide by such of the general and special conditions of release as that office shall impose. I must report to the Office of Pretrial Services, United States Courthouse, 700 Stewart Street, Suite 10101 Seattle, within 24 hours of my release unless released during a weekend or on a holiday in which case I must report at 9:00 a.m. the following court day.

☒ **Other Conditions:**
- ✓ Surrender passport and all travel documents to the court. Do not apply for/obtain a new passport or travel document without permission of the court.
- ✓ Have daily contact with case agent: David Poole at : 617-293-2795
- ✓ Maintain residence with/at:  AS DIRECTED   Do not change residence without prior approval of Pretrial Services or as directed by Pretrial Services.
- ✓ You are prohibited from possessing or having access to firearms and dangerous weapons. All firearms and dangerous weapons must be removed from your residence(s), vehicle(s), and place of employment. This condition operates in conjunction with any restrictions imposed under Title 18, USC 922, and the Washington State Revised Code, Chapter 9.41.
- ✓ Maintain employment, or, if unemployed, actively seek employment as directed by Pretrial Services.

**AGREEMENT BY DEFENDANT:** I understand and agree to comply with every condition marked above, and I understand that if I fail to comply with any conditions of my release, the Court will immediately issue a warrant for my arrest, and I will be subject to a revocation of release, an order of detention, and prosecution for contempt of court. I understand this appearance bond remains in effect during any proceeding on appeal or review.

X _(Signature of Defendant)_

May 9, 2005

Seattle, WA  
_(City and State)_

*Posted*

05-MJ-00227-APPR

---

### ORDER OF RELEASE
It is therefore ORDERED:  
(1) Defendant shall comply with all conditions of this appearance Bond;  
(2) Defendant shall be released from custody, and shall remain at liberty so long as (s)he complies with the provisions of this Appearance Bond, or until further order of the Court.

May 9, 2005  
_(Dated)_

Monica J. Benton  
UNITED STATES MAGISTRATE JUDGE

cc: Defendant, Defense Counsel, U.S. Attorney, Marshal, Pretrial Services

UNITED STATES DISTRICT COURT

for the WESTERN DISTRICT OF WASHINGTON

at Seattle

UNITED STATES OF AMERICA,

Plaintiff,

Case No. 05-0248M-01

vs.

WAIVER OF RULE 5(c)(3)(D) HEARING

Yuri I. Montgomery

and ORDER OF TRANSFER

Defendant,

Posted

## WAIVER OF RULE 5(c)(3)(D) HEARING

I, __Yuri Montgomery__, have appeared before a United States Magistrate Judge in the Western District of Washington, who has advised me of the provisions of Rule 20 and of my right to a further hearing pursuant to Rule 5(c)(3)(D) of the Federal Rules of Criminal Procedure. I wish to waive my right to such further hearing, therefore:

a)  I acknowledge that I am the person named in an indictment, information, or warrant pending in the U. S. District Court for the _____ District of __Columbia__;

b)  I waive my right to production of the warrant or of any other original papers relating to these charges or certified copies thereof;

05-MJ-00227-WV

c)  If I am entitled to a preliminary examination, I elect to have it conducted in the district where the prosecution is pending; and,

d)  I consent to the issuance of an order directing me to appear and answer in said district where the charges are pending.

DATED this 9th day of May, 2005.

_____     _____
Defense Counsel                                          Defendant

## ORDER OF TRANSFER

Based upon the foregoing Waiver, it is hereby ORDERED that the further proceedings in this case shall be conducted in the U. S. District Court for the _____ District of Columbia. The Clerk of this Court shall forthwith transmit to the Clerk in said district the records of proceedings conducted in this district. Unless the defendant is released on bond, the U. S. Marshal is directed to transport defendant as promptly as possible to that district. If released on bond, the defendant is directed to appear in that district for further proceedings at the time and place specified on the bond, or as otherwise directed by court order.

DATED this 9th day of May, 2005

_____
United States Magistrate Judge