UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 05-443 (RCL) |
| | : | |
| v. | : | |
| | : | |
| YURI MONTGOMERY, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INFORMATION FOR LACK OF VENUE

### Introduction

Defendant, Yuri Montgomery, has moved to dismiss the information currently pending against him on the ground that venue in this district is allegedly inappropriate. The information charges him with making and conspiring to make unauthorized and illegal exports. Because a key element of the offenses that Montgomery committed occurred in this district – the failure to obtain prior approval from the Department of Commerce for the exports – and because his conduct directly flouted the authority of the Department of Commerce to restrict his export privileges, venue properly lies in the District of Columbia.

### Background

On December 2, 1997, a federal grand jury in the District of Columbia charged Montgomery in a 32-count indictment in Criminal No. 97-472 (RCL). As in this case, the offenses were export control violations. In particular, the indictment charged that Montgomery had exported crime control and military items to Macedonia and Slovenia without first obtaining the necessary licenses. On November 6, 1998, Montgomery pled guilty, pursuant to a plea agreement, to five counts of the indictment. On January 15, 1999, this Court sentenced

Montgomery to three years of probation, after the government made a motion for a substantial assistance departure under § 5K1.1 of the Sentencing Guidelines.

In the wake of Montgomery's conviction, the Department of Commerce, after providing Montgomery with notice and an opportunity to be heard, entered an order pursuant to Sections 750.8(a) and 766.25 of the Export Administration Regulations ("EAR"), 15 C.F.R. §§ 750.8(a) and 766.25, that denied Montgomery the privilege of exporting commodities from the United States for a period of ten years.[1] The Department of Commerce entered the denial order on September 11, 2000.[2] Montgomery appealed the order. By letter dated December 21, 2000, the Under Secretary for Export Administration rejected Montgomery's appeal. Because Montgomery was subject to a denial order, any export from the United States that he made or caused was unlawful unless he first sought and obtained prior approval from the Department of Commerce. See 15 C.F.R. § 764.3(a)(2). It goes without saying that the Department of Commerce is located in the District of Columbia.

In 2003, agents from the Department of Commerce, Office of Export Enforcement ("OEE") learned that, despite the denial order, Montgomery was continuing to export goods from

---

[1] The Secretary of Commerce originally promulgated the EAR under authority granted by the Export Administration Act ("EAA"), 50 U.S.C. App. §§ 2101-2420. Although the most recent version of the EAA expired in August 2001, the President has kept the EAR in effect by virtue of the power afforded him under the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1706. See Executive Order 13222 (August 17, 2001). Section 766.25 of the EAR gives the Department of Commerce the authority to prohibit any person convicted of an export crime from exporting goods from the United States. Section 750.8(a) permits the Department of Commerce to revoke any licenses previously granted a convicted export offender. The denial order to which Montgomery is subject prohibited him from engaging in a wide range of export activities, including obtaining or using documents that are part of the process of facilitating an export.

[2] The denial order appears as Attachment A to the information.

the United States to Macedonia. A further check revealed that Montgomery had never sought or obtained authorization from the Department of Commerce before making these foreign shipments. In July 2004, OEE agents executed a search warrant at Montgomery's residence in Seattle, Washington.[3] The search led to the discovery of additional documents and e-mail correspondence demonstrating that, since the entry of the September 11, 2000, denial order, Montgomery had arranged for and coordinated almost forty unauthorized shipments of U.S. commodities to Macedonia.

After the search, Montgomery and his counsel had discussions with the government about a possible resolution of Montgomery's criminal liability. When those negotiations proved to be unsuccessful, the government obtained a criminal complaint from this Court on May 4, 2005, charging Montgomery with violating IEEPA, 50 U.S.C. § 1705(b), and the EAR by exporting U.S. origin commodities without obtaining authorization from the Department of Commerce.[4] After his arrest, Montgomery repeatedly waived the thirty days within which the government needed to obtain an indictment so that his counsel could continue to pursue plea options.

On November 17, 2005, Montgomery signed a plea agreement with the government. Accordingly, on December 9, 2005, the government filed the five-count information to which Montgomery had agreed to plead guilty. The first count of the information charges him with conspiring to make unauthorized exports in violation of the denial order, and the remaining four

---

[3] Montgomery did business out of an office that he maintained in his home.

[4] IEEPA creates a ten-year felony for "[w]hoever willfully violates, or willfully attempts to violate, any . . . regulation issued under this chapter." The EAR, which exist under the authority of IEEPA, make it unlawful for a person to "engage in conduct prohibited by or contrary to . . . any order . . . issued [under the EAR]." 15 C.F.R. § 764.2(a).

counts charge specific instances of unauthorized export activities.  However, on January 25, 2006, the date on which Montgomery was to have entered his guilty plea, he instead filed his motion to dismiss.

## Argument

## Venue Is Proper in the District of Columbia

### I.      General Venue Principles

The Constitution guarantees a criminal defendant's right to be tried where he committed his crime.  U.S. Const. art III, § 2, cl. 3.  The Sixth Amendment further dictates that defendants have a right to a trial in "the State and district wherein the crime shall have been committed."  U.S. Const. amend. VI.  See also United States v. Wilson, 26 F.3d 142, 151 (D.C. Cir. 1994).  Rule 18 of the Federal Rules of Criminal Procedure provides that "[e]xcept as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed." Rule 18, Fed. R. Crim. P.

The Supreme Court has held that "'where a crime consists of distinct parts which have different localities the whole may be tried where any part can be proved to have been done.'" United States v. Rodriguez-Moreno, 526 U.S. 275, 281 (1999) (quoting United States v. Lombardo, 241 U.S. 73, 77 (1919)).  Accordingly, 18 U.S.C. § 3237(a) provides that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."[5]

---

[5] Section 3237(a) also defines offenses involving interstate or foreign commerce, such as export crimes, as continuing offenses.  See also United States v. Durrani, 659 F. Supp. 1177, 1182 (D. Conn.), aff'd, 835 F.2d 410 (2d Cir.1987) (export offenses are "continuing" offense for

In <u>Rodriguez-Moreno</u>, the Supreme Court's most recent criminal venue decision, the Court described the analysis for determining venue as follows:

> As we confirmed just last Term, the "'*locus delicti* [of the charged offense] must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts.

526 U.S. at 279 (internal citations omitted).[6]  In <u>United States v. Rowe</u>, 414 F.2d 271 (2d Cir. 2005), the Second Circuit further expanded on the various venue considerations:

> [T]here is not single defined policy or mechanical test to determine constitutional venue. Rather, the test is best described as a substantial contacts rule that takes into consideration a number of factors – the site of the defendant's acts, the elements and nature of the crime, the locus and effect of the criminal conduct, and the suitability of each district for accurate factfinding . . . .

414 F.2d at 278 (quoting <u>United States v. Reed</u>, 773 F.2d 477, 481 (2d Cir. 1985)).

---

purposes of 18 U.S.C. § 3237(a)).

[6] In his motion, Montgomery purports to rely on the "key verbs test" as enunciated in <u>United States v. Crop Growers Corp.</u>, 954 F. Supp. 335 (D. D.C. 1997), in determining whether venue lies in the District of Columbia.  <u>See</u> Motion at 3.  Under the "key verbs test," one looks to the verbs of a statute to determine the nature of an offense.  It is important to note that Judge Kessler issued her opinion in <u>Crop Growers</u> two years before the Supreme Court's decision in <u>Rodriguez-Moreno</u>.  In <u>Rodriguez-Moreno</u>, the Court reviewed the "key verbs test" and stated:

> [W]e have never before held, and decline to do so here, that verbs are the sole consideration in identifying the conduct that constitutes an offense.  While the "verb test" certainly has value as an interpretative tool, it cannot be applied rigidly, to the exclusion of other relevant statutory language.  The test unduly limits the inquiry into the nature of the offense and thereby creates a danger that certain conduct prohibited by statute will be missed.

576 U.S. at 280.  Here, IEEPA makes it unlawful for anyone to willfully violate any regulation issued under its authority, and the information charges Montgomery with violating the EAR regulations governing persons subject to denial orders.  The gravamen of the violation is Montgomery's unauthorized exports to Macedonia, which, as described above, directly implicate the District of Columbia.

> **II.    A Key Element of Montgomery's Offense – His Failure to Obtain Authorization from the Department of Commerce for His Exports – <u>Occurred in the District of Columbia and Venue Therefore Lies Here</u>**

The elements of any export offense are as follows:

(1)     That the defendant exported or caused to be exported goods from the United States;

(2)     That it was necessary for the defendant first to obtain approval from an agency of the government before making the export;

(3)     That the defendant failed to get the necessary approval; and

(4)     That the defendant acted willfully – that is, with knowledge that his conduct was illegal.

<u>E.g.</u>, <u>United States v. Murphy</u>, 852 F.2d 1, 6-7 (1st Cir. 1988); <u>United States v. Beck</u>, 615 F.2d 441, 449-50 (7th Cir. 1980).

"If the statute makes it a crime to fail to do some act required by law, the failure takes place in, and the proper venue is, the district in which the act should have been done." Wright, <u>Federal Practice and Procedure: Criminal 3d</u> § 302.  <u>See</u> <u>also</u> <u>Johnston v. United States</u>, 351 U.S. 215, 220 (1956) (in prosecution for failure of conscientious objector to report for civilian work assignment, venue was proper in the district where the defendant failed to report); <u>United States v. Anderson</u>, 328 U.S. 699 (1946) (in prosecution for refusal to submit to induction into the armed forces venue proper where defendant was to report, not where issuing draft board was located); <u>Rumely v. McCarthy</u>, 250 U.S. 283 (1919) (in prosecution for failure to report control of property on behalf of enemy to Office of Alien Property Custodian in Washington, D.C., venue was proper in D.C.); <u>Lombardo</u> (in prosecution for failure to notify the Office of the Commissioner General of Immigration in Washington, D.C. of the harboring of an alien for

purposes of prostitution in Western District of Washington, venue proper in D.C.); United States v. Murphy, 117 F.3d 137, 140-41 (4th Cir. 1997) (in prosecution for willful failure to pay support in violation of the Child Support Recovery Act, venue was appropriate in district where child who should have received the funds resided in addition to district where non-paying parent lived and was ordered to deliver payments); United States v. Crawford, 115 F.3d 1397, 1405-06 (8th Cir.), cert. denied, 522 U.S. 934 (1997) (same); United States v. Williams, 788 F.2d 1213, 1214-17 (6th Cir. 1986) (in bail jumping case, venue is proper both in district that released the defendant and in the district where the defendant failed to appear); United States v. DiJames, 731 F.2d 758, 761-63 (11th Cir. 1984) (in prosecution for failure to file required report with the Department of Labor, venue was in the District of Columbia, where the report was to have been filed).  Cf. Investors Funding Corp. v. Jones, 495 F.2d 1000 (D.C. Cir. 1974) (venue in civil S.E.C. action based on defendants' failure to timely file required reports with the S.E.C. was in the District of Columbia).

  Once Montgomery became subject to the September 11, 2000, denial order, the only way in which he could lawfully export goods from the United States was to obtain prior authorization from the Department of Commerce.  See 15 C.F.R. § 764.3(a)(2).  Each count of the information alleges that Montgomery failed to get approval from the Department of Commerce before he made the prohibited exports.[7]  His failure to obtain the necessary permission is an essential

---

[7] Counts Two and Three specifically allege that Montgomery caused "export control documents . . . to be filed" in connection with shipments of goods from the United States to Macedonia and absent permission from the Department of Commerce.  The denial order prohibited Montgomery from obtaining or using any "export control documents," and the regulations define the documents at issue here – air waybills (air freight bills of lading) – as export control documents.  See 15 C.F.R. § 772.1.  However, because the air waybills accompany an overseas shipment, the essence of the charges in Counts Two and Three are unlawful and

element of the offense conduct charged here.[8]  Accordingly, because each such failure occurred in the District of Columbia, venue is appropriate in this district.

### III. Other *Rowe* Factors Support Venue in the District of Columbia

Montgomery is incorrect in asserting (Motion at 8-9) that the presence of the Department of Commerce in the District of Columbia bears no relevance to establishing venue here.  To the contrary, the effect of Montgomery's criminal conduct is overwhelming felt in this district.  By repeatedly and blatantly violating the denial order, Montgomery sought to make a mockery of the Department of Commerce's ability to control and punish wayward exporters.  One purpose of this prosecution is to vindicate the authority of the Department of Commerce, which was Montgomery's primary victim.

In addition, this Court is as well suited as any other court to render the parties accurate fact-finding.  The Court has prior experience with these types of prosecutions.  Moreover, Montgomery cannot allege that a jury here would in any way be prejudiced against him or, for that matter, against the government.

---

unauthorized exports.

[8] The fallacy in Montgomery's motion is that it focuses solely on the prohibited exports to the exclusion of the other elements constituting his crimes.  See Motion at 7-9.

**Conclusion**

For the foregoing reasons, the Court should deny the defendant's motion to dismiss for lack of venue.

        Respectfully submitted,

        KENNETH L. WAINSTEIN
        United States Attorney
        D.C. Bar Number 451058

        _____/s/_____
        JAY I. BRATT
        Assistant United States Attorney
        Illinois Bar No. 6187361
        National Security Section, Room 11-437
        555 4th Street, NW
        Washington, D.C. 20530
        (202) 353-3602
        jay.bratt@usdoj.gov

**Certificate of Service**

I, Jay I. Bratt, certify that I served a copy of the foregoing Government's Memorandum in Opposition to Defendant's Motion to Dismiss the Information for Lack of Venue on Stephen F. Brennwald, counsel for defendant, by electronic means this 6th day of March, 2006.

                                        /s/
                                Jay I. Bratt