```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA      )
                              )
     v.                       )    Criminal No. 05-443 (RCL)
                              )
YURI MONTGOMERY.              )
_____)
```

**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INFORMATION FOR LACK OF VENUE**

I.   **INTRODUCTION**

In his opening brief, defendant Yuri Montgomery ("Montgomery") conclusively demonstrated that the essential-elements test, as enunciated in United States v. Rodriguez-Moreno, 119 S. Ct. 1239, 1243 (1999) and United States v. Morgan, 393 F.3d 192 (D.C. Cir. 2004), is employed by this Circuit when deciding venue questions, and that an analysis of the offenses charged in the instant information under that test compels the conclusion that venue does not lie in this district.  The government's opposition argues that venue is proper because a failure to act occurred in this district.  As will be articulated below, the government's attempt to establish venue in the District of Columbia on this basis is wholly without merit.

II.  **THE GOVERNMENT'S VENUE CONTENTIONS ARE WITHOUT MERIT**

   A.  **The Failure To Obtain Authorization Is Not An Element Of Any Offense Charged In This Case.**

Although it is unable to cite a single applicable authority in support of this notion, the government nevertheless postulates that "a key element" of "any export offense" is the "failure to obtain au-thorization" from the Department of Commerce, located in the Dis-

trict.[1]  (Govt. Opp. at 6).  The government's flawed reasoning concludes that because Yuri Montgomery is charged with export offenses, venue is proper in this district.

The government's argument is erroneous for a plethora of reasons, but primarily because it mischaracterizes and misapprehends the offenses alleged and eschews the constitutionally-compelled specific offense[2] venue analysis in favor of a broad based, ill-defined, general analysis that sweeps the pertinent venue issues under the proverbial rug.  As will be demonstrated below, the government's argument collapses under the weight of analytical scrutiny.

The government cites two out-of-district cases, United States v. Murphy, 852 F.2d 1 (1st Cir. 1988) and United States v. Beck, 615 F.2d 441 (7th Cir. 1980), in support of its claim that "a key element" of "all export offenses" is the "failure to obtain authorization".  However, these cases are completely inapposite because: (1) Nowhere in either case is there any discussion of venue or language even remotely resembling the government's claim; (2) both cases address violations of 22 U.S.C. §2778 (willful export of defense articles on

---

[1] This assertion is factually incorrect, as even the inapposite 15 C.F.R. §764.3(a)(2), relied upon by the government, provides for application to the "Office of Exporter Services" which maintains offices not only in Washington D.C., but also Newport Beach, California and San Jose, California.

[2] The government bears the burden of proving by a preponderance of the evidence that venue is proper as to **each count** charged against a defendant.  United States v. Lam Kwong-Wah, 924 F. 2d. 298, 301 (D.C. Cir. 1991); United States v. Corona, 34 F. 3d 876, 879 (9th Cir. 1994); United States v. Beech-Nut Nutrition Corp., 871 F. 2d 1181, 1188 (2nd Cir. 1989).

U.S. Munitions list without a license), not violations of a denial order pursuant to 50 U.S.C. §§ 2410 and 1705, via C.F.R. §764.2; and (3) both cases actually undermine the government's claims as in each case the defendant was charged with a §2778 offense which required as an element of proof that a license was not obtained prior to exporting, and each case was tried in the district where the acts constituting export violations were committed, rather than in the locale where a license was not obtained.  Hence, even where "the failure to obtain authorization" is an element of the offense, that element is not "essential."  The government is unable to cite a single applicable authority, either statutory, case law or treatise, that substantiates the general notion that all export offenses contain a "failure to obtain authorization" element.

More importantly, application of the constitutionally-mandated venue analysis, which requires examination of the specific offenses alleged in the information, conclusively shows that "the failure to obtain authorization" is not an element of any offense charged.  Yuri Montgomery is charged with violations of 50 U.S.C. §§1705 and 2410, via 15 C.F.R. §§ 764.2 and 764.3(a)(2).  Neither of the statutory provisions Montgomery is alleged to have violated, 50 U.S.C. §§1705 and 2410(a), mentions the "failure to obtain authorization" from the Department of Commerce as an element of the offense.

The information further alleges that defendant violated C.F.R. §§764.2 and 764.3.  C.F.R. §764.2 is sub-headed "Violations" and describes in great detail the range of proscribed conduct.  However,

3

the "failure to obtain authorization" from the Department of Commerce is not mentioned anywhere in 15 C.F.R. §764.2 et al., and is therefore not an element of any §764.2 violation.

The information further alleges that Montgomery violated 15 C.F.R. §764.3(a)(2).  However, an individual cannot violate §764.3 because it is not a violations section, but rather, it is a self-described "Sanctions" section that articulates the administrative, civil and criminal penalties applicable to violations of the EAR and IEEPA.  §764.3(a)(2) authorizes the imposition of an order denying export privileges as an administrative sanction for a violation of the ERA or IEEPA; however, it plainly does not allege an offense:

> Authorization to engage in actions otherwise prohibited by the denial order may be given by the Office of Exporter Services, in consultation with the Office of Export Enforcement, following application by a person named in the denial order or by a person seeking permission to deal with a named person.
>
> Id.

The clear, plain language of §764.3(a)(2) does not require an individual subject to a denial order to apply for an exemption.  It simply provides the option of applying for an exemption.

Nevertheless, the government's argument, bereft of any authority, inexplicably converts the administrative option of applying for an exemption from an administrative sanction into both a legally-required duty to act and a legally-required element of an unidentified offense.  Taken to its logical, albeit baseless conclusion, the government's venue argument would have to aver that Montgomery had a

4

legal obligation, that is, he was legally required, to exercise the option of applying for an exemption from the denial order which constituted an element, not of a §764.3 violation, because no such violation exists, but rather, of some other undefined export violation. This argument is rendered even more ludicrous when one understands that it is not only the person subject to the denial order who apparently, under the government's theory, has the legal obligation to exercise the option of applying for an exemption, but also *any third party* who seeks to deal with him.  It is difficult to imagine an element of a substantive offense that must be committed by an uninvolved third party.

"The failure to obtain authorization" is not listed, discussed or even mentioned as an element in any statute or regulation alleged to have been violated by this defendant -- not §1705, §2410 nor §764.2.  §764.3(a)(2) cannot confer venue in this case as it is simply a self-described administrative sanction provision that does not assert any substantive offense but rather simply provides an administrative mechanism for obtaining an administrative exemption from an administrative sanction.  "The failure to obtain authorization" is simply not an element of any charged offense and as such, cannot be the premise for venue in this district.

Even if this Court were somehow disposed to construe the failure to exercise the option of obtaining an exemption as an element of an offense, such a failure certainly could not, under any circumstances, be characterized as an "essential element" of any such offense under

5

Rodriguez-Moreno. In sum, venue simply does not lie in this district.[3]

### B. The Failure to Act Line of Cases Are Inapplicable

Although defendant submits that the prior essential-elements analysis is dispositive of the venue issue, defendant also maintains that the failure-to-act cases are generally inapplicable to exports violations. Defendant acknowledges that "the situs of a crime consisting of a failure to act is the place fixed for performance of the act". United States v. Clines, 958 F. 2d 578, 583 (4th Cir. 1992). ***However, it is only where "the crime alleged is the failure to do a legally required act" that the place fixed for performance is the situs of the offense.*** Johnston v. United States, 351 U.S. 215, 220 (1956). Thus, the crime itself must consist ***solely*** of the failure to act.

Each of the offenses in the failure-to-act cases is entirely comprised of the failure to do a legally required act.[4] As such,

---

[3] The government notes that "the essence" of counts 2 and 3 are unlawful and unauthorized exports, because Yuri Montgomery "caused" export control documents to be filed when his denial order prohibited him from dealing with export control documents, and such documents accompany an overseas shipment. The government again misapprehends the "essence" of the charges alleged. Yuri Montgomery is not charged with unlawfully exporting any items, and the items that were allegedly to be shipped were not prohibited items or items that required a license to export. Yuri Montgomery is charged with violating a denial order by causing export control documents to be filed. (See Information pp. 10-11).

[4] See United States v. Clines, supra, (the offense of failure to file tax returns is committed in the district where the taxpayer is required to file the returns); Johnston v. United States, supra, 351 U.S. at 220 (venue for conscientious objector's failure to report

6

venue is appropriate in the district in which the act was to have occurred.  In stark contrast, export offenses are not entirely comprised of the failure to do a legally required act. Accordingly, the failure-to-act venue rules are inapplicable to the offenses alleged in the instant information.

    **C.**  **Rowe Substantial Contacts Analysis**

The government makes a half-hearted attempt to argue that when considering this question, this Court should apply the Second Circuit's more expansive "substantial contacts test," United States v. Rowe, 414 F.3d 271 (2nd Cir. 2005), even though it is well-settled that this district employs the Rodriguez-Moreno essential-elements test.  Significantly, Rowe itself deferred to the Rodriguez-Moreno analysis.  But even if this Court were to employ the substantial-contacts analysis, the facts of this case would still compel the finding that venue does not lie in this district.[5]  Given its obvious

---

to military service fixed at place designated for reporting); United States v. Garman, 748 F. 2d 218 (4th Cir. 1984) (venue for failure to file tax returns fixed in district where returns are required to be filed); Zerilli v. United States, 706 F. 2d 877 (8th Cir. 1983) (venue for willful failure to appear before district court proper in district where defendant was to appear); United States v. Dyson, 469 F. 2d 735 (5th Cir. 1972), United States v. Scott, 424 F. 2d 285 (4th Cir. 1970) and United States v. Niell, 248 F. 2d 383 (7th Cir. 1957) (Dyson, Scott and Niell are each cases involving venue for failure to report for military service at a designated place for reporting).

    [5].   The substantial-contacts test assesses the site of the defendant's acts, the elements and nature of the crime, the locus and effect of criminal conduct and the suitability of the district for accurate fact-finding.  Here, not one of the defendant's acts occurred in this district, not one of the elements of the offenses charged was committed in this district and not one scintilla of alleged criminal conduct occurred in this district.

7

inapplicability, one suspects that reliance on Rowe is less a genuine argument and more a pretext to denounce what the government views as the particularly egregious nature of the alleged criminal conduct, which it claims consists of "blatantly and repeatedly violating the denial order..." and seeking to "...make a mockery of the Department of Commerce's ability to control and punish wayward exporters." This conduct, the government contends, can only be addressed in this district, because its effect "...is overwhelmingly felt in this district." The government, in a surprisingly candid concession, notes that "[o]ne purpose of this prosecution is to vindicate the authority of the Department of Commerce, which was Montgomery's primary victim." (Govt. Opp. at 8).

Although the government's invective is quite telling[6] in all of its grandeur, it is, like this prosecution, an overblown, malevolent version of relatively innocuous and mostly-uncontested facts.[7] Unfortunately for the government, vindicating an administrative Agency's

---

[6]. This vitriol demonstrates quite forcefully the animus behind this prosecution, the government's heavy-handedness in seeking the imposition of a criminal penalty for at best, the unknowing, non-willful, and unintentional alleged violation of an administrative sanction, and its selective and vindictive nature.

[7]. Yuri Montgomery's elderly parents became quite infirm in Macedonia. Consequently, he sought an inexpensive way to visit them before they passed away and had MICEI place its purchases or transportation costs on his Visa credit card so that he could accumulate frequent-flyer miles, which he could then use to visit his parents. (Information pp. 5-9). The government's characterization of the alleged violations of the denial order as far more severe because they were blatant and open defies common sense and supports the notion that at best, any alleged violations were wholly unknowing, non-willful and unintentional.

authority, punishing perceived flouting, and establishing primary victims are not factors in any known venue analysis. Moreover, even if the totality of the government's statements were true, which they are not, they would still not suffice under the substantial-contacts test to confer venue on this district, as even under that relaxed standard, far more substantial contacts are required to establish venue.

Accordingly, venue simply does not lie under any known venue analysis in the District of Columbia and this Information should be dismissed.

Respectfully submitted:

Brennwald & Robertson

_____
Stephen F. Brennwald, Esq.
922 Pennsylvania Ave. S.E.
Washington, D.C. 20003
(202) 544-1990
Attorney for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was sent by ECF, this 24th day of March, 2006, to Jay Bratt, U.S. Attorney's Office, 555 4th Street, N.W., Washington, D.C. 20530.

_____
Stephen F. Brennwald