UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 05-443 (RCL) |
| ) | |
| YURI MONTGOMERY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the defendant's motion [13] to dismiss the information for lack of venue. Upon consideration of the defendant's motion [13], the opposition thereto [17], defendant's reply [18], defendant's post-hearing supplemental argument [19], the government's opposition thereto [20], and defendant's reply [23], the applicable law, and the entire record herein, the Court concludes that the defendant's motion to dismiss will be denied. The Court agrees with the government's contention that venue lies properly in the District of Columbia.

## I. BACKGROUND

On January 22, 1999, this Court convicted Yuri I. Montgomery, also known as Yuri Malinkowski, of violating the International Emergency Economic Powers Act, 50 U.S.C.A. § 1701-1706 (West 1990 & Supp. 2005) ("IEEPA") and the Export Administration Act of 1979 50 U.S.C.A. App. § 2401 (West 1991 & Supp. 2006) ("EAA"). Specifically, defendant was convicted of trafficking arms from the United States to Macedonia and Slovenia. After receiving notice of this conviction, the United States Department of Commerce Office of Export

Administration issued a denial order prohibiting Montgomery from engaging in export activities until January 22, 2009.  This order is dated September 11, 2000.

Defendant is currently charged with violating the denial order and continuing to export arms and other goods to Macedonia from 2002 to 2004.  He is charged with conspiracy to make exports in violation of the order under 18 U.S.C.A. § 371 (West 2000 & Supp. 2006) along with other counts related to exporting various items, including military and police equipment, and with filing documents in violation of the export control order.  These actions allegedly violated the IEEPA, EAA, and the Export Administration Regulations 15 C.F.R. § 730-770 (2003) ("EAR").

The defense asserts that venue does not lie in the District of Columbia because all of Mr. Montgomery's export activity took place in either Washington State or Macedonia, not in the District of Columbia (Def.'s Mot. 8).  The government does not challenge the factual basis of that assertion, but rather argues that Mr. Montgomery could have legally engaged in exporting goods had he followed the EAR, which states that a person subject to a denial order may engage in the prohibited export activity if he or she first obtains permission from the United States Department of Commerce (Govt.'s Opp'n 7).  The government avers that since an application for that permission would have to be filed in the District of Columbia, venue is proper here (Govt.'s Opp'n 2).

## II. DISCUSSION

A.    Legal Standard

Unless a statute or rule states otherwise, venue is proper in the district where the offense was committed, Fed. R. Crim. P. 18.  Here, Congress has not indicated where it believes the crime to have been committed when a person allegedly violates these statutes, United States v.

Rodriguez-Moreno, 526 U.S. 275, 279 (1999). When different elements of the crime take place in different jurisdictions, venue is proper in any district in which an essential element of the crime has occurred. As this Court has previously stated, "[v]enue may be proper in more than one district, but must be proper for each count of the indictment," United States v. Crop Growers Corp., et al., 954 F. Supp. 335, 351 (D.D.C. 1997) (Kessler, J.) (internal citations omitted).

The Court in Crop Growers determined venue using the key-verbs test, which the defense has asked the Court to apply. The key-verbs test provides a way to decide which actions are relevant to defining where a crime was committed based on the language of the statute, Id. at 352. As the Supreme Court noted, this test is not broad enough to govern every situation: "[w]hile the 'verb test' certainly has value as an interpretive tool, it cannot be applied rigidly, to the exclusion of other statutory language," Rodriguez-Moreno, 526 U.S. at 280. Under this precedent, the Court is directed to consider the essential conduct elements of the crime rather than employ the key-verbs test. The Court will not attempt to revive it. However, even if the Court were to utilize the key-verbs test, venue would be proper in the District of Columbia.

The government has urged that the Court adopt the substantial contacts rule used by the Second Circuit, which "takes into account a number of factors-the site of defendant's acts, the elements of the criminal conduct, and the suitability of each district for accurate fact-finding," United States v. Rowe, 414 F. 3d 271, 278 (2d Cir. 2005) quoting United States v. Reed, 773 F. 2d 477, 481 (2d Cir. 1985). The Court is satisfied with the Rodriguez-Moreno analysis for the purposes of this case and does not feel the need to use another circuit's extension of it. However, the Court notes that venue would also be proper under the substantial contacts rule.

B.     The Charges Against Defendant

In relation to every count against Mr. Montgomery, the government alleges the violation of the EAR, which governs the imposition of a denial order. As we have discussed, an individual subject to a denial order may request authorization to continue exporting goods covered by this order from the Department of Commerce Office of Export Services, 15 C.F.R. § 764.3 (a) 2. This office is located in The District of Columbia. It is undisputed that Mr. Montgomery did not request such authorization. The EAR states that "[n]o person may engage in any conduct prohibited by or contrary to, or refrain from engaging in any conduct required by, the EAA, the EAR or any order, license or authorization issued thereunder,"15 C.F.R. § 764.2 (a). It covers both the action, the violation of the denial order, and the omission, the failure to request permission to export goods notwithstanding the order.

C.     Essential Conduct

The failure to act is instrumental to the charges being filed against the defendant. If he had requested and received authorization to export his goods, he would not be in violation of the denial order. However unlikely it is that permission to export would have been granted, he did not seek such permission. As defendant is charged with violations of the EAR, failure to ask for authorization to export becomes an element of each of those charges. This failure to act occurred in the District of Columbia.

While the Court fully recognizes that this case does not involve export licensing, it is analogous to other export cases in which an element of the individual's crime was the omission of application for some type of authorization to export. The failure to seek authorization to export goods notwithstanding a denial order is sufficiently similar to the failure to apply for a requisite export license to justify applying similar venue considerations. Prosecutions for failure

4

to apply for an export license have taken place in a variety of jurisdictions based on where the acts of exporting occurred. However, they have also been pursued in the District of Columbia because it is where the omission occurred. Such basis for venue has been found proper by this Court, United States v. Quinn, 401 F. Supp. 2d 80, 87 (D.D.C. 2005) (Bates, J. ) (finding venue proper in District of Columbia in an export violation case because defendant's failure to apply for an export license constituted an omission in the District of Columbia).

As the government notes, venue in cases involving a failure to make required filing is typically in the district in which that failure occurred. See e.g. Rumely v. McCarthy, 250 U.S. 283, 284-85 (1919) (finding that venue for failure to file report with Alien Property Custodian is in the District of Columbia, where the Custodian is located); United States v. DiJames, 731 F.2d 758, 762 (11th Cir. 1984) (finding venue in the District of Columbia proper for prosecution of failure to file trusteeship report because the information should have been filed with the Secretary of Labor in the District of Columbia); Investors Funding Corp. of NY v. Jones, 495 F. 2d 1000, 1002-03 (D.C. Cir. 1974) (finding action for injunctive relief to compel required filing should be brought in district where defendant failed to file). Omission of other actions is also prosecuted in the district in which the actions were to have occurred. See e.g. United States v. Johnston, 351 U.S. 215, 221 (1952), United States v. Anderson, 328 U.S. 699, 703-05 (1946), United States v. Scott, 424 F. 2d 285  (4th Cir. 1970) (prosecutions for failures to act related to induction were deemed proper in the place to which the draftee or conscientious objector was supposed to appear). The case before the Court today is similar to these various examples. All of them demonstrate that when an individual has a duty to act in some way and does not, prosecution of the failure to act is properly in the district in which the omission occurred.

## III. CONCLUSION

For the foregoing reasons it is hereby

ORDERED that defendant's motion [19] to clarify, treated as a motion to file a supplemental memorandum, is GRANTED; and it is further

ORDERED that defendant's motion [13] to dismiss the information for lack of venue is DENIED.

SO ORDERED.

Signed by Royce C. Lamberth, United States District Judge, July 24, 2006.